UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LISA SHELTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:20-cv-1391-AGF |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This action is before this Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Lisa Shelton was not disabled, and thus not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, or supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f. For the reasons set forth below, the decision of the Commissioner will be affirmed.

## BACKGROUND

The Court adopts the statement of facts set forth in Plaintiff's Statement of Uncontroverted Facts (ECF No. 22-1), which are largely are admitted by the Commissioner (ECF No. 27-1), and the Commissioner's Statement of Additional Facts (ECF No. 27-1), which Plaintiff has not refuted. Together, these statements provide a fair

---

[1] After this case was filed, a new Commissioner of Social Security was confirmed. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Commissioner Andrew Saul as the defendant in this suit.

description of the record before the Court.  Specific facts will be discussed as needed to address the parties' arguments.

Plaintiff, who was born on July 6, 1965, filed her applications for benefits on May 1, 2018.  She alleged disability beginning March 28, 2018, due to degenerative disc disease, obesity, type 2 diabetes, neuropathy, gastroesophageal reflux (GERD), hypertension, right Achilles tendonitis, obstructive sleep apnea, bursitis of the right hip, asthma, and osteoarthritis of the bilateral knees.  Plaintiff's applications were denied at the administrative level, and she thereafter requested a hearing before an Administrative Law Judge ("ALJ").

A hearing was held on August 5, 2019, at which Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified.  By decision dated August 27, 2019, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease and obesity.  The ALJ also found Plaintiff had non-severe impairments including: type 2 diabetes, neuropathy, GERD, hypertension, right Achilles tendonitis, sleep apnea, bursitis of the right hip, asthma, and mild osteoarthritis of the bilateral knees.  The ALJ found claimant's osteoarthritis was described as "mild" by x-rays taken in June of 2019, and treatment notes from Plaintiff's treating physician, Andrew Kazdan, M.D., Tr. 504, and a visit to an emergency room on June 8, 2019.  Tr. 596.  The ALJ found Plaintiff has the residual functional capacity ("RFC") to perform less than the full range of "light" work, as defined by the Commissioner's regulations, in that:

> [S]he can lift 20 pounds occasionally and 10 pounds frequently, carry 20 pounds occasionally and 10 pounds frequently, sit for 6 hours, stand for 6 hours, and walk for 6 hours in an 8-hour workday, and can push/pull as

> much as she can lift/carry. However, she can never climb ladders, ropers, or scaffolds, but can frequently climb ramps and stairs. The claimant can never work at unprotected heights.

Tr. 259.

The ALJ next found that Plaintiff was unable to perform her past relevant work as a supervisor of janitorial services. However, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform based on the VE's testimony and in light of Plaintiff's vocational factors and RFC, including Cashier II (DOT 211.462-010), Cafeteria Attendant (DOT 311.677-010), and Order Caller (DOT 209.667.014). The ALJ determined that Plaintiff is not disabled.

Plaintiff filed a timely request for review by the Appeals Council of the Social Security Administration. Plaintiff submitted three sets of Mercy Hospital records from Dr. Kazdan to the Appeals Council. The Appeals Council determined none of the records would change the outcome of the decision because: 1) the set of records dated May 9, 2018 through July 1, 2019 are already contained in the record and were considered by the ALJ; 2) the set of records dated between April 4, 2018 and July 24, 2019 do not show a reasonable probability that they would change the outcome of the decision; and 3) the set of records dated September 20, 2019 through December 19, 2019 are not relevant because they occurred after August 27, 2019—the date on which the ALJ decided Plaintiff's case. The Appeals Council denied Plaintiff's appeal on July 25, 2020. Plaintiff has thus exhausted all administrative remedies, and the ALJ's decision stands as the final agency action now under review.

**Plaintiff's Arguments Before This Court**

Plaintiff argues that the ALJ erred by: (1) adopting the RFC proposed by state consultative examiner Dr. John Duff, as Dr. Duff did not have access to all of Plaintiff's medical records; (2) failing to adequately evaluate Plaintiff's pain and activities of daily living; (3) failing to recontact Dr. Kazdan, Plaintiff's treating provider, about his treatment notes; and (4) assigning the wrong weight to Dr. Kazdan's opinion.

**Dr. Duff's Opinion**

Plaintiff claims the ALJ erred in finding the opinion of state consultative examiner Dr. Duff persuasive because he did not have the opportunity to review Plaintiff's most recent medical records. Plaintiff specifically claims Dr. Duff failed to consider the following evidence: Dr. Kazdan's treatment notes indicating right lateral hip tenderness, pain with range of motion of right shoulder, elbow, and neck, poor grip strength, and tenderness in the right Achilles, Tr. 95, 121 129, 131, 148; bilateral knee x-rays, Tr. 610; and electromyography and nerve conduction studies. Tr. 179-184.

With the exception of the bilateral knee x-rays, the evidence was submitted only to the Appeals Council and was not before the ALJ. Moreover, one of the pages of treatment notes, as well as the electromyography and nerve conduction studies are dated after the ALJ decided Plaintiff's case on August 27, 2019. Tr. 148, 179-184. As such, the Appeals Council found they are not related to the period at issue. *See* 20 C.F.R. §§ 404.970(b) (The Appeals Council must consider "new and material evidence" that "relates to the period on or before the date of the [ALJ] hearing decision."). The Court will first consider whether the ALJ erred in relying upon Dr. Duff's opinion in light of

4

the records before the ALJ.  Next, the Court will determine whether the Appeals Council erred in finding the medical records submitted after the ALJ issued her decision did not create a reasonable probability of a different outcome.

A consultant's medical opinion need not be based on subsequently-created medical records for the ALJ to rely on it.  *Barker v. Colvin*, 2015 WL 4928556, at *1 (W.D. Mo. Aug. 18, 2015) ("[T]he Court is not aware of any legal authority which holds a consultant's medical opinion must be based on subsequently created medical records, or that the consultant's opinion must necessarily be discounted because it is not based on those records.").  The opinions of state agency medical examiners merit significant consideration, as ALJs are required by regulation to consider their findings of fact about the nature and severity of a claimant's impairments.  *See* 20 C.F.R. §§ 404.1527(f); 20 C.F.R. §§ 404.1513a(b)(1) (ALJs "must" consider evidence proffered by a state agency disability examiner, "because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation."); *see also Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007) (An ALJ may credit the opinion of a non-examining or non-treating medical provider over the assessments or notes of the treating physician.).  However, "an ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018) (citing *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016)).

Dr. Duff issued his opinion on August 16, 2018.  Tr. 332.  The opinion was based on a review of Dr. Kazdan's notes through July 17, 2018, an x-ray of Plaintiff's knee and

5

back, an MRI of Plaintiff's spine, and the records of Plaintiff's visit to the emergency room following a series of spider bites.  Tr. 324-332.  Dr. Duff found Plaintiff has a combination of severe impairments that limit some daily activity: degenerative changes of the c spine with limited range of motion and noted scoliosis with left side facet arthrosis of the left spine and decreased range of motion.  Tr. 326.  He also found Plaintiff's essential hypertension, GERD, and diabetes were non severe.  Tr. 327.  Dr. Duff opined that Plaintiff had the capacity to occasionally lift or carry up to 20 pounds, frequently lift or carry 10 pounds, stand or walk 6 hours in an 8-hour workday and sit 6 hours in an 8-hour workday.  Tr. 328.  He also found she could climb stairs and ramps frequently, ladders never, and push, pull, balance, stoop, kneel, crouch, or crawl an unlimited amount.  *Id*.  These limitations are the same limitations contained in Plaintiff's RFC.  The ALJ found Dr. Duff's opinion to be persuasive: "Dr. Duff concluded the claimant could complete work at the light exertional level, but would require postural limitations.  Such a conclusion is persuasive, as it is consistent with the record as a whole."  Tr. 261.

  Plaintiff contends that the ALJ should not have relied on Dr. Duff's medical opinion because significant medical records were created after Dr. Duff authored his opinion.  Plaintiff cites to bilateral knee x-rays which were reviewed by the ALJ, Tr. 610, and several pages of Mercy Hospital records submitted to the Appeals Council.  Tr. 95, 121, 129, 131, 148, 179-184.  Plaintiff does not claim the Appeals Council erred when it considered the evidence; she claims the ALJ erred in relying on state agency consultative physician Dr. Duff's opinion because he did not have access to the new evidence.  The

6

ALJ could not have considered the impact of most of the evidence Plaintiff cites in determining the weight of Dr. Duff's opinion because much of that evidence was not part of the record before the ALJ.

The ALJ was able to review the records submitted by Plaintiff after Dr. Duff issued his opinion and before she wrote her opinion, including the bilateral knee x-rays. Tr. 610.  The ALJ specifically noted Plaintiff's knee osteoarthritis was "described as 'mild' by" the x-rays.  Tr. 258.  Plaintiff has not pointed to any evidence containing a new, significant medical diagnosis that could reasonably have changed Dr. Duff's opinion.  *Moreno* 882 F.3d at 728.  As such, the ALJ did not err in relying on the opinion.

The remainder of the evidence—Dr. Kazdan's treatment notes documenting right lateral hip tenderness and pain with range of motion, tenderness in the right Achilles, and electromyography and nerve conduction studies—was submitted only to the Appeals Council.  The Appeals Council will review an ALJ's decision if it receives additional evidence that is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5). Evidence submitted to the Appeals Council is material when it relates to the claimant's condition for the time period for which benefits were denied, and not to "after-acquired conditions or post-decision deterioration of a pre-existing condition." *Bergmann v. Apfel,* 207 F.3d 1065, 1069-70 (8th Cir. 2000). *See also Jones v. Callahan,* 122 F.3d 1148, 1154 (8th Cir. 1997) (new evidence concerning subsequent deterioration of a previously non-disabling condition is not material).  Whether evidence is actually new, material, and

related to the adjudicated period is a question of law the court reviews de novo. *Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995).

The Appeals Council determined that the evidence either did not show a reasonable probability that it would change the outcome of the decision or did not relate to the period at issue, as it is from after the ALJ issued her opinion.  Tr. 2.  First, the Court will consider the records created prior to the decision date, which consist of treatment notes from Plaintiff's visits with Dr. Kazdan.  Tr. 95, 121, 129, 131.  The notes refer to lateral hip tenderness and pain with range of motion, pain with range of motion in her neck, and tenderness in the right Achilles tendon.  His notes simply list Plaintiff's symptoms, and do not contain any significant new or material findings.  As such, the Appeals Council did not err in determining that there was no reasonable probability that the evidence would change the outcome of the decision.

Next, the Court will consider the evidence from after the relevant time period: one page of medical records from Mercy Hospital and electromyography and nerve conduction studies.  Tr. 148, 179-184.  Although Plaintiff describes the medical records a documenting "right Achilles tenderness [and] painful range of motion in the wrists with a positive Tinel's sign on the right," a review of the record reveals it is instead a lab order and results indicating Plaintiff has type 2 diabetes, vitamin D deficiency, and myalgia. (ECF No. 22 at 4, Tr. 148).  This record does not create a reasonable probability that the ALJ would change her decision.

Plaintiff also cites to electromyography and nerve conduction studies.  The studies were conducted on November 26, 2019.  Tr. 179-184.  They are not related to the

8

relevant period, as they are not evidence of Plaintiff's condition on or before the hearing date. At best, the studies indicate post-decision deterioration of a pre-existing condition. *Bergmann,* 207 F.3d at 1069–70. *See also, Eidoen v. Apfel*, 221 F.3d 1342 (8th Cir. 2000) (finding treatment notes which indicate plaintiff began reporting suicidal thoughts and anxiety attacks after hearing date are not related to relevant period.). The Court concludes that the Appeals Council did not err in determining the evidence would not affect the outcome of the decision.

### Plaintiff's Pain Evaluation and Activities of Daily Living

Plaintiff next argues the ALJ erred by failing to properly evaluate her pain pursuant to *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). Plaintiff also contends the ALJ erred by overstating Plaintiff's activities of daily living. The Court will consider these arguments together because activities of daily living are one of the *Polaski* factors an ALJ must consider in evaluating a claimant's subjective complaints of pain.

In evaluating subjective complaints of pain, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Polaski*, 739 F.2d at 1322. "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will

9

normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). However, "an ALJ need not explicitly discuss each factor." *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019) (citing *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011)).

Plaintiff first contends the ALJ erred in determining that her activities of daily living do not support her allegations of disabling pain. Next, Plaintiff contends the ALJ failed to make a credibility determination that detailed her reasons for discrediting Plaintiff's testimony and discussed the *Polaski* factors. Plaintiff argues that her work history and use of prescription pain medication support her pain. Plaintiff relies heavily on the parts of her Mercy hospital records submitted to the Appeals Council after the ALJ denied her application for disability. Tr. 35, 91, 125, 129, 143, and 25. The Appeals Council determined this evidence does not show a reasonable probability that it would change the outcome of the decision. Upon a review of the records, the Court agrees that Plaintiff has not shown a reasonable probability that this evidence would change the ALJ's credibility determination. The Court rejects Plaintiff's claim of error.

On this record, the ALJ did not err in finding Plaintiff's described daily activities and exhibited behavior were inconsistent with her stated limitations. The ALJ considered Plaintiff's testimony that she is able to help care for her 10-month-old grandchild on occasion, she regularly drives, shops, and completes household chores such as laundry or preparing simple meals. Tr. 259-260. The ALJ noted the washer and dryer are located in the basement, *id.*, and Plaintiff testified that she has no problems completing her personal care tasks. *Id*. The ALJ also noted Plaintiff's testimony that she has difficulty standing

10

for a long period of time, such as when she washes the dishes, and experiences daily pain on a level of 7-10 out of 10.  Tr. 259.

Plaintiff claims that her daily living activities are not inconsistent with her testimony about disabling pain, and the Eighth Circuit has "repeatedly stated that the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work." *Hogg v. Shalala*, 45 F.3d 276, 278-79 (8th Cir. 1995).  The Eighth Circuit has acknowledged that their "cases admittedly send mixed signals about the significance of a claimant's daily activities in evaluating claims of disabling pain…." *Clevenger v. Soc. Sec. Admin.*, 567 F.3d 971, 976 (8th Cir. 2009).  However, it is not unreasonable to rely on evidence that a plaintiff engages in activities including laundry, washing dishes, preparing meals, driving, attending church, or visiting friends to infer a plaintiff's assertion of disabling pain is not entirely credible. *Id*.

Here, the ALJ reasonably relied on Plaintiff's testimony that she engaged in activities such as caring for a 10-month-old grandchild, laundry, preparing meals, driving, and shopping in concluding Plaintiff's testimony as to the effects of her pain were not entirely credible.  But, Plaintiff's testimony as to her daily activities was only one of many factors the ALJ considered.  As such, the ALJ did not err in finding Plaintiff's daily activities do not support her allegations of disabling pain.

The ALJ also made a proper evaluation of Plaintiff's pain and detailed her credibility determination. She discussed the duration, intensity, and frequency of Plaintiff's pain, Tr. 259, the precipitating and aggravating factors of the pain, *id*.,

11

Plaintiff's functional restrictions, and the absence of objective medical evidence to support Plaintiff's complaints. Although the ALJ did not discuss the dosage, effectiveness, and side effects of any medications or Plaintiff's work history, the ALJ noted that Plaintiff has no anticipated surgery or other treatments for her disabling conditions and has not attended physical therapy—despite being prescribed physical therapy. Tr. 261. And though Plaintiff was prescribed pain medication, she does not allege any disabling side effects and Dr. Kazdan's records stated medication was helping. The ALJ was not required to discuss every *Polaski* factor. *See Schwandt*, 926 F.3d at 1012. She considered the *Polaski* factors and gave good reasons for discrediting Plaintiff's testimony as to the intensity of her pain. Furthermore, none of the records submitted to the Appeals Council create a reasonable probability of a different outcome. As such, the Court will defer to the ALJ's credibility determination.

**Recontacting Dr. Kazdan about his opinion**

Plaintiff next claims the ALJ misinterpreted Dr. Kazdan's ambiguous treatment notes and should have contacted Dr. Kazdan for clarification about the notes in light of the ambiguity. The ALJ found some of Dr. Kazdan's "treatment notes are especially problematic." Tr. 260. Dr. Kazdan

> indicated among other statements that the claimant suffered from ongoing chronic pain, fatigue, severe pain, arthritis, and fibromyalgia. However, [his] treatment notes on the next page of the record diagnose the claimant with only hypertension, diabetes…obstructive sleep apnea, obesity, gastroesophageal reflux disease without esophagitis, and recommended a screening for colon cancer. Thus, although it appears the claimant made significant allegations which were recorded in the record, there is a lack of sufficient evidence to support the severity of her alleged symptoms.

12

*Id*.

Plaintiff claims that pursuant to 20 CFR § 404.1512(e), the ALJ was required to recontact Dr. Kazdan to seek clarification because the report contains an ambiguity. Although past versions of 20 CFR § 404.1512 obligated the ALJ to recontact medical sources to resolve ambiguities, *see* 20 CFR § 404.1512 (2011) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved"), the current regulation does not contain such a requirement. Moreover, Dr. Kazdan's treatment notes do not contain any apparent ambiguity. Tr. 717-718. As the ALJ correctly states, the notes appear to first list Plaintiff's statements as to her conditions and then, on the next page, Dr. Kazdan records Plaintiff's actual diagnosis. The ALJ was not required to recontact Dr. Kazdan pursuant to CFR § 404.1512(e).

**Evaluation of Dr. Kazdan's Opinion**

Finally, Plaintiff contends the ALJ failed to properly evaluate Dr. Kazdan's opinion. For claims like Plaintiff's that are filed on or after March 27, 2017, an ALJ evaluates medical opinions and administrative medical findings pursuant to 20 C.F.R. § 404.1520c. These new rules provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). An ALJ is to evaluate the persuasiveness of medical opinions and prior administrative medical findings in light of the following factors: (1) supportability; (2) consistency; (3) relationship with the

13

claimant, which includes: (i) length of the treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of the treatment relationship, and (v) examining relationship; (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies."  20 C.F.R. § 404.1520c(a)-(c).

Under the new regulations, supportability and consistency "are the most important factors" to consider when determining the persuasiveness of a medical source's medical opinions and, therefore, an ALJ must explain how he considered the factors of supportability and consistency in his decision.  20 C.F.R. § 404.1520c(b)(2).  An ALJ may, but is not required to, explain how he considered the remaining factors.  *Id.*; *see also Brian O. v. Comm'r of Soc. Sec.*, No. 1:19-CV-983-ATB, 2020 WL 3077009, at *4 (N.D.N.Y. June 10, 2020) (quoting 20 C.F.R. § 404.1520c(a), (b)) ("Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how he or she considered the medical opinions' and 'how persuasive he or she finds all of the medical opinions.'" (alterations omitted)).

Dr. Kazdan completed a function report, in which he opined that Plaintiff could walk only half a city block without rest, could only sit for 30 minutes and stand for 5 minutes at a time, could stand less than 2 hours total in an 8-hour workday, must take 4 or 5 breaks for 3-4 hours during an 8 hour workday, and would likely be absent more than 4 days per month due to her impairments.  Tr. 834-35.  Dr. Kazdan also opined that

14

Plaintiff could rarely lift and carry less than 10 pounds and never lift or carry more than 10 pounds. The ALJ found "[s]uch extreme limitations are not persuasive, as the record as a whole does not support these conclusions." Tr. 261.

The ALJ noted that Dr. Kazdan's findings are contradicted by Plaintiff's June 8, 2019 visit to Barnes Jewish Hospital. Plaintiff sought treatment for right side flank pain, bilateral knee pain, neck stiffness, and back pain. The exam found a normal range of motion, no tenderness or deformity of the musculoskeletal system, and no tenderness or instability of the knee. The treating doctor noted her exam was "overall unremarkable." Tr. 596, 599. The ALJ also found Dr. Kazdan's limitations were inconsistent with his treatment notes, which "repeatedly state the claimant is in no apparent distress and no tenderness in her neck. Moreover, Dr. Kazdan's treatment notes are void of objective findings to support the extreme limitations contained in his opinion." Tr. 261. In addition, the Court notes that Dr. Kazdan's disability evaluation and function report are contrary to the relatively conservative treatment provided.

Plaintiff argues Dr. Kazdan's treatment notes do contain objective findings, including his diagnosis of circular radiculopathy and back pain, frequent tingling in Plaintiff's hands and feet, tenderness in the right Achilles, and pain with range of motion in the bilateral wrists. Tr. 836. For the most part, these are reflective of Plaintiff's subjective symptoms, not objective findings. Plaintiff also contends that the electromyography and nerve conduction studies provide objective findings that bolster Dr. Kazdan's opinion. However, these studies were conducted after the ALJ reached her decision and therefore are not part of the relevant period. The ALJ adequately considered

15

the supportability and consistency of Dr. Kazdan's opinion and did not err in concluding his evaluation was unpersuasive in light of the medical evidence in the record. The Court thus concludes that the ALJ's decision is supported by substantial evidence in the record as a whole.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**. A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 30th day of March, 2022.